IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARYLOU ACCIAVATTI,<br><br>PLAINTIFF,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL OF PHILADELPHIA,<br><br>DEFENDANT. | Civil Action No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT AND JURY DEMAND

Plaintiff Marylou Acciavatti, by and through her attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1. This is an action for an award of damages, attorneys' fees and other relief on behalf of Plaintiff Marylou Acciavatti (hereinafter "Plaintiff" or "Ms. Acciavatti"), a former employee of The Children's Hospital of Philadelphia (hereinafter, "Defendant" or "CHOP"). Ms. Acciavatti was discriminated against on the basis of her disability or because CHOP perceived her to be disabled, and retaliated against for complaining about discrimination and for seeking accommodation of her disability and/or perceived disability.  Further, CHOP failed to engage in the requisite good faith, interactive process with respect to accommodating Ms. Acciavatti's disability.

2. This action arises under the American with Disabilities Act, 42 U.S.C. § 12101, <u>et seq</u>. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 <u>et seq</u>. ("NJLAD").

## JURISDICTIONAL STATEMENT

3. This Court has original jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States pursuant to 29 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On October 15, 2019, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On November 12, 2019, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice.[1]

## VENUE

7. This action properly lies in the District of New Jersey pursuant to 28 U.S.C. § 1391(b).

---

[1] It has been less than one year since Ms. Acciavatti requested that her Charge of Discrimination be dual-filed as a Complaint with the Pennsylvania Human Relations Commission for Defendant's violations of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"). Ms. Acciavatti will seek to amend her Complaint in this matter to add her PHRA claims once she has exhausted her administrative remedy with respect to those claims. Additionally, after Ms. Acciavatti received the Right to Sue in this matter, she was terminated by CHOP. Ms. Acciavatti will seek to amend to add her federal claims relating to the termination of her employment after she has exhausted her administrative remedies with respect to her wrongful termination claim arising under the ADA.

8. This action properly lies in the District of New Jersey because significant activities associated with the claims alleged took place in this jurisdiction.

## PARTIES

9. Plaintiff Marylou Acciavatti is an adult female citizen and resident of Philadelphia, Pennsylvania and the United States of America.

10. Ms. Acciavatti is a qualified individual with disabilities within the meaning of the ADA and NJLAD.

11. Ms. Acciavatti's disabilities affect a major bodily function and substantially limit one or more major life activities.

12. Ms. Acciavatti's disabilities have affected her for a period far in excess of six months.

13. Defendant Children's Hospital of Philadelphia is a hospital in Philadelphia, Pennsylvania, with its primary campus located at 3401 Civic Center Boulevard, Philadelphia, Pennsylvania 19104 and a satellite office in Voorhees, New Jersey.

14. At all relevant times, Defendant is and has been an employer employing more than 500 employees.

15. At all relevant times, employees of Defendant acted as agents and servants for Defendant.

16. At all relevant times, employees of Defendant were acting within the scope of their authority and in the course of employment under the direct control of Defendant.

17. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

18. At all relevant times hereto, Plaintiff Marylou Acciavatti was an "employee" of Defendant within the meaning of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

19. At all relevant times hereto, Defendant was an "employer" and/or "person" under the laws at issue in this matter and is accordingly subject to the provisions of said laws.

20. During her employment, CHOP regarded Ms. Acciavatti as disabled.

21. This cause of action arose out of transactions or occurrences that took place in whole or in part in Voorhees, New Jersey.

22. Defendant conducts substantial business within Voorhees, New Jersey.

23. This Honorable Court has personal jurisdiction over the Defendant.

**FACTS**

24. Ms. Acciavatti began working for CHOP in or about 1989.

25. Beginning in or about 1999, Ms. Acciavatti was employed full-time as a Pediatric Cardiac Sonographer for CHOP.

26. Most recently, Ms. Acciavatti was splitting her time between CHOP's main campus in Philadelphia, Pennsylvania and its satellite location in Voorhees, New Jersey.

27. While employed by the Hospital for approximately thirty (30) years, Ms. Acciavatti excelled in her position and performed her duties in an excellent and professional manner.

28. Notwithstanding her years of excellent service and loyalty, Ms. Acciavatti was threatened and harassed at work, subjected to an unsafe work environment, discriminated against on the basis of her disabilities and/or perceived disabilities, retaliated against for her complaints of discrimination, and denied an accommodation she requested for her disabilities.

29. On or about April 19, 2019, Ms. Acciavatti was subjected to a hostile and terrorizing work environment involving verbal abuse, intimidating behavior and threats by the father of one of her patients.

30. At the time, Ms. Acciavatti was working at one of CHOP's satellite locations, at the Voorhees Specialty Care Center (the "Center") in Voorhees, New Jersey.

31. Specifically, among other patients that day, Ms. Acciavatti was to perform an echo sonogram for a 10-year-old patient at the Center.

32. The 10-year-old patient appeared extremely nervous and frightful.

33. The patient's father, on the other hand, acted extremely aggressive, hostile and intimidating during their entire visit at the Center.

34. Despite the father's hostile and aggressive demeanor, Ms. Acciavatti treated the patient, and her father, with the same professionalism, compassion, respect and excellent care and treatment that she has done for all of her patients.

35. From the beginning of their interaction, the patient's father displayed a hostile and aggressive attitude and demeanor, even becoming highly contentious and angry with Ms. Acciavatti over her inclusion of his daughter's middle name for proper patient identification.

36. Throughout Ms. Acciavatti's sonogram of the 10-year-old patient, the patient's father repeatedly bullied and intimidated Ms. Acciavatti by, among other things, pointedly staring at her, making overly sarcastic and rude remarks, taunting, and provoking her to attempt to initiate a fight.

37. Notably, during the procedure itself, the patient's father repeatedly attempted to provoke Ms. Acciavatti and start an argument over his daughter's care, thus interfering with Ms. Acciavatti's work.

38. The patient's father also stared at Ms. Acciavatti in a threatening way and pointed his cell phone at her numerous times.

39. By the time Ms. Acciavatti finished the patient's sonogram, Ms. Acciavatti was terrified of the patient's father and sought to extricate herself from the situation.

40. Ms. Acciavatti took the patient back to the exam room, cleaned her lab, and immediately documented her concerns in writing.

41. Shortly thereafter, Ms. Acciavatti began to walk to the restrooms when she heard yelling and screaming in an adjacent exam room.

42. Ms. Acciavatti overheard the patient's father loudly and aggressively screaming lies and falsehoods about Ms. Acciavatti.

43. Among other things, the patient's father stated that Ms. Acciavatti needed to be "retrained" on how to check a patient's name, and stated that he had access to many lawyers and would not hesitate to sue Ms. Acciavatti and CHOP.

44. The patient's father also lied about Ms. Acciavatti and her job performance, and informed Ms. Acciavatti's supervisor of alleged "conversations" between them that had not actually occurred.

45. The patient's father also physically threatened Ms. Acciavatti, including indicating that he was in the military and knew a lot of people, and that he would not hesitate to "come after" Ms. Acciavatti.

46. Upon hearing the numerous lies and threats, Ms. Acciavatti noted that her supervisor was making no efforts to defend her, a dedicated employee of CHOP for thirty (30) years with no disciplinary issues.

47. Ms. Acciavatti became even more upset and disturbed, and knocked on the door in order to present her side of the story and negate the false accusations being made about her.

48. After knocking and being ignored, Ms. Acciavatti entered the room and requested the opportunity to defend herself.

49. Unfortunately, despite Ms. Acciavatti's attempts to defend herself, the patient's father continued to loudly berate and criticize Ms. Acciavatti, including stating that he would sue CHOP and Ms. Acciavatti.

50. Ms. Acciavatti felt that the patient's father was dangerous and volatile, and the incident caused Ms. Acciavatti significant humiliation and disgrace.

51. Ms. Acciavatti was extremely disturbed, anxious and affected by the violent conduct, threats and aggression against her.

52. Accordingly, Ms. Acciavatti spoke with Security for CHOP several times, spoke with her manager several times, and spoke with the Police Department.

53. Even after the patient and her father departed the building, Ms. Acciavatti continued to feel extreme fear and intimidation.

54. Ms. Acciavatti experienced severe emotional, mental and physical harm as a result of the incident, and has since been compelled to undergo psychiatric and psychotherapy sessions.

55. The incident caused Ms. Acciavatti panic, stress, anxiety, humiliation, insomnia, panic attacks, nightmares, chest pain, low self-esteem and lack of confidence in her work performance despite years of excellent performance, severe depression, and loss of her love for work.

56. In addition, the stress of the threats greatly exacerbated Ms. Acciavatti's existing condition of fibromyalgia.

57. Due to the disabilities that resulted from the incident, consisting of, among other things, Ms. Acciavatti's severe depression, PTSD, stress, anxiety, and significant worsening of her fibromyalgia pain, and out of fear that the patient's father would follow through on his threat to "come after" her, Ms. Acciavatti was unable to return to work.

58. On or about April 25, 2019, Ms. Acciavatti requested an accommodation in the form of a request to be moved to another one of the many CHOP satellite locations.

59. CHOP refused her accommodation, informing her that she had to go back to work at the Voorhees location.

60. Thus, the Hospital refused and/or failed to take any efforts to protect Ms. Acciavatti at work, a dedicated and compassionate employee of CHOP for thirty (30) years with no prior issues with patients or patients' families.

61. Despite her disability and debilitating fear, Ms. Acciavatti attempted to return to work at the Voorhees location, as mandated by CHOP.

62. However, immediately upon her return, Ms. Acciavatti was retaliated against for making her complaints and requesting the accommodation.

63. Indeed, instead of attempting to accommodate Ms. Acciavatti, on April 26, 2019, the Hospital retaliated against her by issuing her a written Disciplinary Action Report with the comment that: "The customer is always right."

64. Until that point, Ms. Acciavatti had never received any disciplinary or negative review or action, for the entirety of her thirty (30) years of employment at CHOP.

65. Notably, Ms. Acciavatti was informed that the disciplinary notice given to her was a "final warning," even though, in her thirty (30) years of employment at CHOP, she had never received even a first warning or any other warning.

66. On November 25, 2019, after over thirty (30) years of exemplary work performance, in a further and final act of retaliation for Ms. Acciavatti's reports of threats and the unsafe work environment, Ms. Acciavatti was terminated.

67. These suspicious circumstances suggest that Ms. Acciavatti's termination was motivated by discrimination and retaliation.

68. Given her years of excellent and unblemished service to CHOP, CHOP's treatment of Ms. Acciavatti after the harassing work incident, and the circumstances surrounding her termination, Ms. Acciavatti maintains that she was discriminated against and harassed on the basis of her disability and/or perceived disability, that she was subjected to retaliation for her complaints, that she was denied an accommodation she requested for her disabilities, and that her termination was a result of such discrimination and retaliation.

69. Ms. Acciavatti has suffered mental anguish and severe emotional distress as a proximate result of the actions and inactions of Defendant.

70. Defendant and its agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Ms. Acciavatti severe emotional distress.

71. Ms. Acciavatti has suffered financial losses, which include, among other things, lost wages, medical expenses, and an obligation for attorneys' fees and costs of bringing suit, as a proximate result of the actions and inactions of Defendant.

## COUNT I
### The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

72. Plaintiff Marylou Acciavatti repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

73. Based on the foregoing, Defendant has engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

74. In discriminating against Ms. Acciavatti on the basis of her disability and/or because Defendant regarded Ms. Acciavatti as disabled, in denying Ms. Acciavatti her requested accommodation, and in retaliating against Ms. Acciavatti for her complaints, Defendant violated the ADA.

75. Said violations were intentional and willful.

76. Said violations warrant the imposition of punitive damages.

77. As the direct and proximate result of Defendant's violation of the Americans with Disabilities Act, Plaintiff Marylou Acciavatti has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

78. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## COUNT II
### New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

79. Plaintiff Marylou Acciavatti repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

80. Based on the foregoing, Defendant has engaged in unlawful employment practices in violation of the New Jersey Law Against Discrimination.

81. In discriminating against Ms. Acciavatti on the basis of her disability and/or because Defendant regarded Ms. Acciavatti as disabled, in denying Ms. Acciavatti her requested accommodation, and in retaliating against Ms. Acciavatti for her complaints, Defendant violated NJLAD.

82. Defendant's violations were intentional and willful.

83. Defendant's violations warrant the imposition of punitive damages.

84. As a direct and proximate result of the unlawful employment practices engaged in by Defendant, Plaintiff Marylou Acciavatti has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon.

85. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## **PRAYER FOR RELIEF**

86. Plaintiff Marylou Acciavatti repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein

**WHEREFORE**, Plaintiff Marylou Acciavatti respectfully requests that this Court enter judgment in her favor and against Defendant, and Order:

    a. Appropriate equitable relief, including reinstatement or front pay;

b.  Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination and retaliation;

c.  Defendant to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of Defendant's unlawful conduct;

d.  Defendant to pay Plaintiff punitive damages;

e.  Defendant to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f.  Defendant to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's attorneys' fees;

g.  Plaintiff be granted any and all other remedies available under the ADA; and

h.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff Marylou Acciavatti hereby demands trial by jury as to all issues so triable.

BELL & BELL LLP

By: _____
Christopher A. Macey, Jr., Esquire
Bell & Bell LLP
1617 John F. Kennedy Boulevard
Suite 1254
Philadelphia, PA 19103
(215) 569-2500

*Attorneys for Plaintiff Marylou Acciavatti*

Dated: February 7, 2020